## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| DEREK L. PLUMMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-2799 (RBW) |
| ) | |
| BOTTLING GROUP, LLC, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## **MEMORANDUM OPINION**

The plaintiff, Derek L. Plummer, proceeding pro se, brings this civil action against

Bottling Group, LLC ("Bottling Group"); John Deluca; Shiby Chacko; and Joshua Hain

(collectively, the "defendants"), alleging the wrongful termination of his employment.  See

Defendants' Notice of Removal, Exhibit ("Ex.") A (Complaint) at 4, ECF No. 1-1 (hereinafter,

"Compl.").  Currently pending before the Court are: (1) the Defendants' Motion for Judgment on

the Pleadings ("Defs.' Mot." or the "defendants' motion"), ECF No. 17; and (2) the Plaintiff['s]

Motion Response for the Judgment on the Pleadings [and] Plaintiff['s] Motion for Summary

Judgment ("Pl.'s Mot." or the "plaintiff's motion"), ECF No. 20.  Upon careful consideration of

the parties' submissions,[1] the Court concludes for the following reasons that it must grant the

defendants' motion and deny the plaintiff's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Reply in Support of Their Motion for Judgment on the Pleadings and Response to Plaintiff's Motion for Summary Judgment ("Defs.' Reply"), ECF No. 22.

# I.   BACKGROUND

## A.   Factual Background

The plaintiff "was employed by Bottling Group[,]" Pl.'s Mot. at 5,[2] from approximately "1989–2017[,]" id. at 10; see id. at 7 (stating that the plaintiff "was first hired [on] []July 24, 1989[]").[3]  The plaintiff was a member of "[Teamsters] Local Union 730" (the "Union") during the times relevant to this case, see id., and "worked under a collective [b]argaining agreement ('CBA')" between the Union and Bottling Group, id. at 4; see Defs.' Mot., Ex. 5 (Collective Bargaining Agreement ("CBA Excerpts")), ECF No. 17-5.  In 2015, the plaintiff engaged in arbitration to resolve a dispute related to his employment, which "le[d] [ ] to [his] suspension[,]" Pl.'s Mot. at 3, after which he "returned [ ] to work in December 2015[,]" id. at 5.  Bottling Group then terminated the plaintiff's employment in 2017,[4] see Compl. at 1, which resulted in the plaintiff filing a charge with the National Labor Relations Board (the "NLRB") against the Union on July 27, 2017.  See Defs.' Mot., Ex. 1-B-4 (Charge Against Labor Organization or Its

---

[2] In order to avoid ambiguity, the Court uses the Bates numbering when referring to the plaintiff's motion, rather than the plaintiff's numbering, in light of the fact that the plaintiff appears to have numbered his motion in a non-consecutive manner.  See generally Pl.'s Mot.

[3] The Court notes that the plaintiff's Complaint in this case contains little to no factual allegations.  See Compl. at 1 (reciting legal arguments regarding the defendants' treatment and the alleged wrongful termination of the plaintiff).  However, as the defendants correctly state, see Defs.' Mot. ¶¶ 2–4, in ruling on a Rule 12(c) motion, the Court may consider "matters of which [it] may take judicial notice[,]" Equal Emp. Opportunity Comn'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997), including "matters of public record, such as prior court proceedings[,]" Morris v. Fed. Bureau of Prisons, No. 09-cv-2034 (RJL), 2010 WL 2574142, at *1 (D.D.C. June 25, 2010) (citing Covad Commc'ns Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005)).  The Court may also consider "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  Hinton v. Corrs. Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009).  Moreover, a court should "read all of [a pro se plaintiff's] filings together[,]" Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999)—even those not contained in the complaint— before ruling on a Rule 12(c) dispositive motion.  Therefore, the Court will draw the factual allegations in this case from all of the plaintiff's filings, as well as public records submitted by the defendants with their motion.

[4] Although not reflected in the plaintiff's filings or the public records submitted by the defendants, the defendants represent that the plaintiff's employment was terminated on April 27, 2017, and that he subsequently "filed a grievance regarding his April 2017 termination."  Defs.' Mot. ¶ 7.  The defendants further represent that "the Union declined to pursue the grievance regarding [the p]laintiff's termination to arbitration" and that "[the p]laintiff was informed of th[e termination] decision in May 2017."  Id. ¶ 9.

Agents ("NLRB Charge")) at 1, ECF No. 17-1 (alleging that, "[s]ince about May 2017," the

Union "ha[d] restrained and coerced employees in the exercise of rights protected by Section 7

of the [National Labor Relations] Act [('NLRA')] by refusing to arbitrate the grievance of [the

plaintiff] regarding his discharge for arbitrary or discriminatory reasons or in bad faith").  The

NLRB dismissed the plaintiff's charge, and its dismissal was upheld by the NLRB Office of

Appeals on August 2, 2018.  See id., Ex. 1-B-5 (Letter from the NLRB to Derek L. Plummer

dated August 2, 2018 ("NLRB Letter")) at 1, ECF No. 17-1.

On April 17, 2019, the plaintiff filed a complaint in the Superior Court of the District of

Columbia against two Union officials, see id., Ex. 3 (Amended Complaint, Plummer v. Murphy,

Civ. Action No. 19-1825 ("Plummer I Complaint")) at 1, ECF No. 17-3,[5] and the defendants in

that case subsequently removed the matter to this Court based upon federal question jurisdiction,

stating that "[§] 301 of the Labor Management Relations Act ([']LMRA[']) provides federal

question jurisdiction over 'suits for violation of contracts between  an employer and a labor

organization.'"  Id., Ex. 6 (Notice of Removal, Plummer v. Murphy, Civ. Action No. 19-1825

("Plummer I Notice of Removal")) ¶ 2, ECF No. 17-6 (quoting 29 U.S.C. § 185(a)).  After the

case was then removed to this Court, it was assigned to Judge Emmet Sullivan, see Notice of

Assignment, Civ. Action No. 19-1825 (June 24, 2019), before eventually being reassigned to

Magistrate Judge Zia Faruqui, see Notice of Reassignment, Civ. Action No. 19-1825 (Sept. 14,

2020).  On August 13, 2021, Judge Faruqui granted summary judgment for the defendants and

dismissed the case.  See Order at 1, Civ. Action No. 19-1825 (Aug. 13, 2021), ECF No. 25.

---

[5] The defendants represent that the plaintiff's initial complaint in this case was filed on December 4, 2018, see
Defs.' Mot. ¶ 11, although the relevant complaint for purposes of the subsequent proceedings is the plaintiff's
amended complaint, which was filed on April 17, 2019, see id., Ex. 3 (Plummer I Complaint) at 1, and is the only
complaint from those proceeding included in the record for this case.

B.      **Procedural History**

On August 12, 2021, the plaintiff filed a second complaint in the Superior Court of the District of Columbia, which forms the basis for the allegations in this case.  See Compl. at 1. This action was not brought against Union officials, but instead against Bottling Group and three Bottling Group employees.  See id.  On October 21, 2021, the defendants removed the matter to this Court based on federal question jurisdiction, stating that "[§] 301 of the . . . []LMRA[] provides federal jurisdiction over 'suits for violation of contracts between an employer and a labor organization.'"  Defendants' Notice of Removal ¶ 2, ECF No. 1.  On December 9, 2021, the defendants filed their motion for judgment on the pleadings that is the subject of this Memorandum Opinion, see Defs.' Mot. at 1, followed by the filing of the plaintiff's motion for summary judgment and opposition to the defendants' motion on January 4, 2022, see Pl.'s Mot. at 1, to which the defendants filed their reply in support of their motion and opposition to the plaintiff's motion on January 12, 2022, see Defs.' Reply at 1.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "[T]he standard of review for motions for judgment on the pleadings under Rule 12(c) . . . is essentially the same as that for motions to dismiss under Rule 12(b)(6)."  Jung v. Ass'n of Am. Med. Colls., 339 F. Supp. 2d 26, 35–36 (D.D.C. 2004).  To survive a motion to dismiss under Rule 12(b)(6), the allegations in the complaint must state a facially plausible claim on which the plaintiff is entitled to prevail.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Court, which is required to assume that all well-pleaded allegations in the complaint are true, must be able to find that the

complaint is sufficient to "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555; <u>see also</u> <u>Iqbal</u>, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting <u>Twombly</u>, 550 U.S. at 570)).  Moreover, legal conclusions masquerading as factual allegations are not enough to survive a motion to dismiss.  <u>See</u> <u>Browning v. Clinton</u>, 292 F.3d 235, 242 (D.C. Cir. 2002).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.

When resolving a Rule 12(c) motion, "the [C]ourt must not rely on facts outside of the pleadings, must construe the complaint in a light most favorable to the plaintiff, and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." <u>Maniaci v. Georgetown Univ.</u>, 510 F. Supp. 2d 50, 59 (D.D.C. 2007).  And, while "[t]he standard for motions pursuant to Rule 12(c) essentially mirrors the standard for motions to dismiss under Rule 12(b)[,] . . . a Rule 12(c) motion is not identical to a Rule 12(b) motion in every regard." <u>Tapp v. Wash. Metro. Area Transit Auth.</u>, 306 F. Supp. 3d 383, 391 (D.D.C. 2016).  "That is, while the focus of a motion to dismiss lies with the plaintiff's inability to proceed on his [or her] claim[,] . . . a motion for judgment on the pleadings centers upon the substantive merits of the parties' dispute." <u>Id.</u> at 391–92.  Therefore, in order to prevail on a Rule 12(c) motion, "[t]he moving party must show that no material issue of fact remains to be solved and that it is entitled to judgment as a matter of law." <u>Jud. Watch, Inc. v. U.S. Dep't of Energy</u>, 888 F. Supp. 2d 189, 191 (D.D.C. 2012).

In applying the above framework, the Court is mindful of the fact that the plaintiff is proceeding in this matter <u>pro se</u>.  This appreciation is required because the pleadings of <u>pro se</u>

parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Furthermore, all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion. See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999). However, just like parties represented by attorneys, a pro se litigant "must comply with the Federal Rules of Civil Procedure and this Court's local rules[.]" Hedrick v. Fed. Bureau of Investigation, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

### III.   ANALYSIS

In support of their motion for judgment on the pleadings, the defendants argue: (1) "[a]s a threshold matter, [that the p]laintiff's common law claims are preempted by § 301 of the LMRA[,]" Defs.' Mot. ¶ 16, and constitute "hybrid § 301/fair representation claim[s]," id. ¶ 20; and (2) because the plaintiff's claims are hybrid § 301/fair representations claims, "[the p]laintiff's claim[s are] barred by the [applicable] six-month statute of limitations[,]" id. at 11.[6] Although the plaintiff does not directly respond to the defendants' arguments, he does in relevant part, state that his "Complaint [ ] is predicated on the . . . [c]ontractual agreement between Union . . . [m]embers and Bottling Group [e]mployees." Pl.'s Mot. at 2. The plaintiff further states that

---

[6] The defendants argue in the alternative that "[the p]laintiff's claims are barred by res judicata." Defs.' Mot. ¶ 39. However, because the Court ultimately concludes that it must dismiss the plaintiff's claims due to the plaintiff's failure to file this action within the applicable statute of limitations, see infra Section III.B, it need not address the defendants' alternative argument for dismissal. Cf. Diebel v. United States, No. 07-cv-302 (ESH), 2007 WL 2128300, at *1 n.1 (D.D.C. July 25, 2007) (stating that "[t]he Court need not reach [alternative] arguments since [the] case w[ould] be dismissed on other [12(b)(1) and 12(b)(6)] grounds.").

the defendants and the "Union [o]fficials involved consumed all of the time that created [the

defendants'] [s]tatute of [l]imitations claims[,]" and that "[the d]efendants created that

problem[,] not the [p]laintiff."[7]  Id. at 3.  The Court will first address the threshold questions of

(1) whether the plaintiff's claims are preempted by the LMRA, and (2) whether the plaintiff has

alleged a hybrid § 301/fair representation claim, before determining (3) whether the plaintiff

filed his claims within the applicable statute of limitations.

## A.    Whether the Plaintiff's Claims are Preempted by the LMRA

The defendants argue that the plaintiff's claims are preempted by the LMRA because

"[a]ll of [his] claims are inextricably intertwined with rights and responsibilities set forth in the

[CBA]."  Defs.' Mot. ¶ 18.  Construing the plaintiff's claims as "a wrongful termination claim

and—read generously—a breach of contract claim against his [former] employer, Bottling

Group[,]" id. ¶ 16, the defendants contend that "[w]hether Bottling Group wrongfully terminated

[the p]laintiff would necessarily turn on whether his termination was 'for just cause' as allowed

by the CBA[,]" id. ¶ 18, and "[l]ikewise, the Court would also have to interpret the grievance

provisions in the CBA to the extent that [the p]laintiff alleges that Bottling Group breached its

contract by not following the proper grievance procedures[,]" id. ¶ 19.  The plaintiff does not

directly address the question of whether his claims are preempted by the LMRA.  See generally

Pl.'s Mot.

---

[7] The plaintiff also argues that, due to "[the defendants'] refusal to respectfully cooperate in this very del[icate] and sensitive complaint, [ ] [s]ummary [j]udgment should be granted in favor of the [p]laintiff[.]" Pl.'s Mot. at 7. However, the plaintiff presents only conclusory statements regarding why he is entitled to summary judgment, see, e.g., id.; id. at 2 (stating that the "[d]efendants' behavior and lack of vested interest displayed a [basis] for [s]ummary [j]udgment in favor of the [p]laintiff"), and does not provide any undisputed facts which would warrant summary judgment in his favor, see Fed. R. Civ. P. 56(a).  Therefore, because even pro se plaintiffs must meet the applicable standard to be entitled to summary judgment, see Parr v. Ebrahimian, 70 F. Supp. 3d 123, 127 n.2 (D.D.C. 2014) ("Although [a plaintiff's] pleadings are read liberally, the same summary judgment standard applies, notwithstanding [his or] her pro se status."), the Court concludes that, in light of the plaintiff's purely conclusory arguments, it is without any reasonable basis to award summary judgment to the plaintiff and must therefore deny his motion.

"One corollary of the well-pleaded complaint rule . . . is that Congress may so completely pre[]empt a particular area [of law] that any civil complaint raising [a] select group of claims is necessarily federal in character."  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63–64 (1987). And, "[o]nce an area of state law has been completely pre[]empted, any claim purportedly based on that pre[]empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."  Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987).  Section 301 of the LMRA states:

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  "In passing the LMRA, Congress 'authorize[d] federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements.'"  Brown v. Potomac Elec. Power Co., 306 F. Supp. 3d 194, 199 (D.D.C. 2018) (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 403 (1988)) (second alteration in original).  "[T]he preemptive force of [§] 301 is so 'extraordinary . . . that [it] converts an ordinary state common law complaint into one stating a federal claim[.]'"  Id. (quoting Metro. Life. Ins. Co., 481 U.S. at 65) (second alteration in original).  And, "[o]nce a court concludes that a plaintiff's state-law claim is preempted by [§] 301, it may [ ] treat the claim as a [§] 301 claim[.]"  Brown, 306 F. Supp. 3d at 202.

A state law claim is preempted by § 301 of the LMRA if: (1) "resolution of [the] state-law claim is substantially dependent upon analysis of the terms of [the] agreement made between the parties in a labor contract," Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985); or (2) the state law claim "requires the interpretation of a collective-bargaining agreement[,]" Lingle,

486 U.S. at 413.  Thus, "[s]tate law claims that depend on . . . application of terms in a collective

bargaining agreement are preempted[,]" while "[t]hose that have a basis wholly independent of

the labor contract are not.  Black v. Nat'l Football League Players Ass'n, 87 F. Supp. 2d 1, 4

(D.D.C. 2000).  Where a union "fail[s] to perform a duty . . . arising out of the

collective[ ]bargaining agreement . . . , not a duty . . . owed to every person in society[,]

[p]re[]emption by federal law cannot be avoided by characterizing the [u]nion's negligence as a

state-law tort."  United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362, 363

(1990).  And, in that situation, a "tort claim cannot be described as independent of the collective-

bargaining agreement."  Id. at 371.  Moreover, where the plaintiff's asserted contract rights are

dependent upon a collective bargaining agreement, "courts have held that breach of contract

claims are 'inextricably intertwined' or 'substantially dependent' on the [collective bargaining

agreement], and therefore preempted."  Brown, 306 F. Supp. 3d at 200–01 (collecting cases).

Here, the plaintiff alleges that the defendants "denied [his] [c]ivil citizen[']s right to work

and retire[,]" "interfered with [his] due process[ rights,]" and "conspired with Union . . . officials

[to] terminate [him.]"  Pl.'s Mot. at 2 (internal quotation marks omitted).  Furthermore, he states

that "[t]his [ ] [c]ase is predicated on the . . . [c]ontractual agreement between Union . . .

[m]embers and Bottling Group [e]mployees[,]" i.e., the CBA, id., and that the defendants

"refused to show [j]ust [c]ause for the [t]ermination directly relating to the [ ] Union . . .

[c]ontract [ ] at that time[ ,]" id. at 6 (internal quotation marks omitted).  The relevant CBA

provides that

> [t]he [e]mployer shall have full and exclusive rights to manage its business,
> including . . . [to] suspend or discharge for just cause, and to promote, demote, or
> transfer on the basis of seniority, ability, skill, and performance, [and] to lay off
> employees because of lack of work or for other business reasons.

9

Defs.' Mot., Ex. 5 (CBA Excerpts) at 4.  Furthermore, it provides for grievance procedures

should an employee allege a violation of the terms of the CBA.  See id., Ex. 5 (CBA Excerpts) at

5.  Therefore, because the core of the plaintiff's claims and allegations concern the defendants'

conduct related to and leading up to his "suspen[sion] [and] discharge[,]" id., Ex. 5 (CBA

Excerpts) at 4; see Pl.'s Mot. at 6 (stating that the defendants "refused to show [j]ust [c]ause for

[his] [t]ermination[,]" and referencing his "[s]uspension and [w]rongful[] [t]ermination from

Bottling Group"), resolution of this claim would necessarily "depend on . . . application of terms

in [the CBA,]" Black, 87 F. Supp. 2d at 4, as the CBA provides the very employment rights

which the plaintiff asserts, see United Steelworkers of Am., AFL-CIO-CLC, 495 U.S. at 363

(stating that where a union "fail[s] to perform a duty . . . arising out of the [CBA,] . . .

[p]re[]emption by [the LMRA] cannot be avoided").  And, to the extent that the plaintiff alleges

a breach of contract claim, the claim is "preempted by [§] 301 because he does not have an

independent source of contract rights apart from the CBA."  Brown, 306 F. Supp. 3d at 200.

       Thus, because the plaintiff's claims are "substantially dependent upon analysis of the

terms of [the CBA,]" Allis-Chalmers Corp., 471 U.S. at 220, the Court concludes that his claims

are preempted by § 301 of the LMRA.

**B.     Whether the Plaintiff's Claim Constitutes a Hybrid § 301/Fair Representation
        Claim**

       Having concluded that the plaintiff's claims are preempted by § 301 of the LMRA, the

Court will next consider whether his claims constitute hybrid § 301/fair representation claims.

The defendants argue that "[the plaintiff's] claim should [ ] be construed as a hybrid § 301

claim" because his "allegation of a conspiracy between Bottling Group and the Union

necessarily implicates alleged wrongful action by both the employer and the union[,]" thus

rendering "[his] claims against [the d]efendants and the Union [ ] inextricably intertwined[.]"

Defs.' Mot. ¶ 23.  Again, the plaintiff does not directly address the question of whether his claims constitute hybrid § 301/fair representation claims, see generally Pl.'s Mot., but he does argue that the defendants "conspired with Union . . . officials [to] terminate [him,]" id. at 2, and appears to reference the Union's duty of fair representation, see id. ("The . . . Union [c]ontract [has a] direct focus on [h]onest, [l]oyal[,] and [f]aithful representation and did not interpret [f]air [r]epresentation.").

      "It has long been established that an individual employee may bring suit against his [or her] employer for breach of a [CBA]."  DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163 (1983).  However, where the employee alleges wrongful action on the part of the union as well, he or she "may bring suit against both the employer and the union, notwithstanding the outcome or finality of [any] grievance or arbitration proceeding."  Id. at 164.  As the Supreme Court has explained,

> [s]uch a suit, as a formal matter, comprises two causes of action.  The suit against the employer rests on § 301, since the employee is alleging a breach of the [CBA].  The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the [NLRA].

Id.  Furthermore, while "[t]he employee may bring his [or her] action against the employer, the union, or both, '[ ] the case he must prove is the same[,]'" Cephas v. MVM, Inc., 520 F.3d 480, 485 (D.C. Cir. 2008) (quoting DelCostello, 462 U.S. at 165), i.e., "if the claim is a hybrid then the employee must show (1) the union breached its [duty of fair representation] and (2) the employer breached the CBA[,]" id.

      Here, although the plaintiff only brought this action against Bottling Group and individual employees of Bottling Group, the substance of his claims constitute allegations both "that [his] employer violated § 301 of the [LMRA] . . . by breaching the [CBA,]" Reed v. United Transp. Union, 488 U.S. 319, 328 (1989); see supra Section III.A, and that the Union "breached

its duty of fair representation . . . by mishandling the ensuing grievance-and-arbitration proceedings[,]" Reed, 488 U.S. at 328.  The core of his wrongful termination claim rests on the allegation that the defendants "conspired with Union . . . officials [to] terminate [him.]"  Pl.'s Mot. at 2.  And, he makes various allegations concerning Union official Franklin Myers, see Defs.' Mot., Ex. 1-A (Declaration of Franklin Myers ("Myers Decl.")) ¶ 6, ECF No. 17-1 (stating that "[i]n [his] capacity as Union representative, [Myers] represented [the plaintiff] concerning a grievance he filed after he had been terminated by [Bottling Group]"), and Union attorney Mark Murphy, see id., Ex. D (Declaration of Mark J. Murphy ("Murphy Decl.")) ¶ 3, ECF No. 17-1 (stating that "[i]n September 2015[,] [he] represented the Union at an arbitration with [Bottling Group] challenging its decision to termination [the p]laintiff"), regarding their conduct as part of the grievance process.  See, e.g., Pl.'s Mot. at 3 ("I called [a]ttorney Mark Murphy[,] but[] he never answered . . . his phone nor did he return[] any of my [p]hone . . . calls since the [defendants'] [h]arassment started back up [on] April 8, 2016."); id. at 5 ("If and when Franklin Myers handles [g]rievances, [he] came to [g]rievance meetings unprepared, with no copy of the grievance and his mind already made up for [Bottling Group]."); id. at 6 ("Just before [Bottling Group] walked in [to a meeting,] I asked Franklin Myers, '[W]hy are they suspending me?' Franklin replied, 'Derek, you're [f]ucking [f]ired.'  [A]nd I asked, 'For [w]hat?'  Franklin replied, 'Derek[,] I'm not going to get into this with you.'").  Thus, because the plaintiff has alleged claims against both his employer and the Union which are "inextricably interdependent[,]" United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 66 (1981) (Stewart, J., concurring); see id. at 67 ("To prevail against either the [employer] or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the [CBA] but must also carry the burden of demonstrating a breach of duty by the Union.") (quoting Hines v. Anchor Motor

Freight, Inc., 424 U.S. 554, 570–71 (1976)) (first alteration in original), the Court concludes that

the plaintiff has alleged a hybrid § 301/fair representation claim, see DelCostello, 462 U.S. at

164–65.  Moreover, the Court reaches this conclusion despite the fact that the plaintiff has only

brought this action against Bottling Group and individual Bottling Group employees, because the

action need not be brought against both the employer and the Union to constitute a hybrid

claim.[8]  See Cephas, 520 F.3d 480, 485 (D.C. Cir. 2008) ("The employee may bring his [or her]

action against the employer, the union, or both[.]").  Thus, having concluded that the plaintiff's

claims constitute hybrid § 301/fair representation claims, the Court will next determine whether

the plaintiff timely filed this action within the statute of limitations applicable to this type of

claim.

**C.**     **Whether the Plaintiff's Claim is Barred by the Applicable Statute of Limitations**

The defendant argues that, "[a]s a hybrid § 301 claim, [the p]laintiff's claim is barred by

the six-month statute of limitations."  Defs.' Mot. at 11.  Specifically, the defendants argue that

"it is public record that [the p]laintiff filed an initial NLRB complaint against the Union on July

27, 2017" and "[t]herefore, under binding D.C. Circuit precedent, [his] claim accrued on July 27,

2017[.]"  Id. ¶ 28.  And, "[b]ecause [the p]laintiff did not file this lawsuit until on or about

August 12, 2021, his hybrid § 301 claim [was filed] well outside of the [six-month] statute of

limitations."  Id.  The plaintiff yet again does not directly address the defendants' argument that

his claim is time-barred, see generally Pl.'s Mot., except to say that "[a]ll investigators, Bottling

---

[8] The Court notes that, not having named the Union or Union officials as defendants, "[the] plaintiff may not have intended to bring a hybrid claim, but rather to sue only [his] employer for breach of the CBA."  Montgomery v. Omnisec Int'l Sec. Servs., Inc., 961 F. Supp. 2d 178, 184 n.1 (D.D.C. 2013).  However, the Court will nonetheless construe the plaintiff's claims as such, given the substance of his allegations.  See, e.g., id. at 184 (construing the plaintiff's claim as a hybrid claim where the plaintiff had not named the union or union officials as defendants).

Group [ ] [m]anagers, [and] Union [o]fficials involved consumed all of the time that created their [s]tatute of [l]imitations claims[,]" id. at 3.

Hybrid § 301/fair representation claims "are subject to the six-month statute of limitations provided in § 10(b) of the NLRA, 29 U.S.C. § 160(b), which begins to run when 'the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" Simmons v. Howard Univ., 157 F.3d 914, 916 (D.C. Cir. 1998) (quoting Vadino v. A. Valey Eng'rs, 903 F.2d 253, 260 (3d Cir. 1990)) (citation omitted). Furthermore, "[a]n unbroken string of precedent supports the proposition that when a plaintiff accuses his [or her] union of a breach of the duty of fair representation in a charge filed with the NLRB, he [or she] has by then, as a matter of law, 'discovered' the grounds for his [or her] hybrid § 301 claim." Id. (collecting cases).

Here, the Court agrees with the defendants that the plaintiff's hybrid § 301 claims accrued, at the latest, on the date when he filed his charge against the Union with the NLRB.  It is undisputed by the parties, and a matter of public record, that the plaintiff filed his charge with the NLRB on July 27, 2017, see Defs.' Mot., Ex. 1-B-4 (NLRB Charge) at 1, over four years before he filed his claims in this case on August 12, 2021, see Compl. at 1.  Moreover, the basis for the plaintiff's NLRB charge includes the same "acts constituting the alleged violation[,]" Simmons, 157 F.3d at 916, in this case.  See Defs.' Mot., Ex. 1-B-4 (NLRB Charge) at 1 ("Since about May 2017, the [Union] has restrained and coerced employees in the exercise of rights protected by [§] 7 of the [NLRA] by refusing to arbitrate the grievance of [the plaintiff] regarding his discharge for arbitrary or discriminatory reasons or in bad faith.").

Accordingly, having construed the plaintiff's claims in this case as hybrid § 301/fair representation claims, and because there is no dispute of material fact regarding the date of the

plaintiff's NLRB charge, the Court concludes that the plaintiff failed to file this action within the

six-month limitations period prescribed for this type of claim pursuant to the NLRA.  <u>See</u>

<u>Simmons</u>, 157 F.3d at 916.  Therefore, the defendants are entitled to judgment on the plaintiff's

claims, "[as] these claims cannot be sustained as a matter of law[,]" <u>Tapp</u>, 306 F. Supp. 3d at

399.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendants' motion

for judgment on the pleadings and deny the plaintiff's motion for summary judgment.

**SO ORDERED** this 9th day of March, 2023.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.